## 70405. DEAN v. THE STATE.
(338 SE2d 711)

POPE, Judge.

On February 27, 1980 defendant Lynn Wayne Dean entered a guilty plea to a charge of burglary and was "sentenced" to the penitentiary for five years, but was given five years probation under the First Offender Act (OCGA § 42-8-60). Due to a conviction on August 22, 1984 for burglary, the court entered an adjudication of guilt on

October 23, 1984 pursuant to OCGA § 42-8-60 (b), finding that defendant had violated the terms of probation. Defendant was sentenced to ten years imprisonment for the 1980 burglary charge, effective from the date of adjudication. We granted defendant's discretionary appeal.

1. We turn first to the procedural issue of whether the revocation of "first-offender" probation is controlled by the discretionary appeal procedure of OCGA § 5-6-35. The statute applies to "orders revoking probation," making no distinction between "first-offender" probation (see OCGA § 42-8-60 et seq.) and probation otherwise provided for in criminal cases (see OCGA § 42-8-34). The purpose of the discretionary appeal statute is in part to reduce the tremendous case load of the state's appellate courts. Applying the plain meaning of OCGA § 5-6-35 (a) (5) in this case will obviate any need for a party to follow the dissent's suggestion to file duplicitous appeals. Nevertheless, the dissent espouses the view that revocation of first-offender probation is, in effect, exempt from the discretionary appeal process. In support of this view, the dissent asserts that an appeal from the revocation of first-offender probation "is more than a mere 'order revoking probation.' It is actually an appeal also from the judgment of guilt itself as well as from the new sentence." No authority is cited for this proposition.

OCGA § 42-8-64 provides: "A defendant sentenced pursuant to this article shall have the right to appeal in the same manner and with the same scope and same effect as if a judgment of conviction had been entered and appealed from." The term "sentence" in legal parlance is generally confined in meaning to be "[t]he judgment formally pronounced by the court or judge upon the defendant after his conviction in a criminal prosecution. . . .." Black's Law Dictionary 1222 (5th ed. 1979). That is, a "sentence" is the final judgment in a criminal case which usually forms the predicate for appellate review. See generally OCGA § 5-6-34 (a) (1); *Phillips v. State*, 153 Ga. App. 410 (265 SE2d 293) (1980). However, we cannot accept the dissent's premise that the General Assembly's use of the word "sentence" in OCGA § 42-8-64 limits a criminal defendant's right to appeal his conviction to those situations in which he has been found to have violated the terms of his first-offender status. In enacting the First Offender Act the General Assembly expressly intended "to preserve the right to an appeal." Ga. L. 1968, pp. 324, 325. Viewed in this light, it is clear that OCGA § 42-8-64 is intended to provide a defendant a direct appeal from his conviction upon the imposition of first-offender status (a "sentence" if you will), notwithstanding the absence of a formal and final "adjudication of guilt." See *Brainard v. State*, 246 Ga. 586 (272 SE2d 683) (1980). See also *Davenport v. State*, 136 Ga. App. 913 (2) (222 SE2d 644) (1975). In other words, first-offender status

takes the place of a "sentence" and once imposed upon a criminal defendant, his case assumes the mantle of finality necessary to bring a direct appeal of his conviction pursuant to OCGA § 5-6-34 (a) (1). See, e.g., *Dailey v. State*, 136 Ga. App. 866 (222 SE2d 682) (1975). Since defendant in this case has followed the proper procedure to obtain appellate review of the revocation of his first-offender probation by petitioning this court for discretionary review, and since the court has granted same, we now turn to the merits of his appeal.

2. Defendant first challenges the trial court's conclusion that his guilty plea to the 1980 burglary was given intelligently and voluntarily. Once the question of the validity of a guilty plea has been raised, the burden is on the State to show that the plea was intelligently and voluntarily entered. "The [S]tate may accomplish this end by two means, (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or (2) fill a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary." *Roberts v. Greenway*, 233 Ga. 473, 475 (211 SE2d 764) (1975).

In the absence of a record of the entry of defendant's guilty plea to the 1980 burglary charge, the State sought to carry its burden of proof by eliciting testimony from the attorney who had represented defendant at that time. Although the attorney did not remember the taking of defendant's guilty plea itself, he did recall certain portions of his representation of defendant. For example, he remembered having many conversations with defendant as well as interviews with two co-defendants who had implicated defendant in the crime. Although defendant initially asserted his innocence of the crime, he did not vacillate once he had opted for the plea bargain arranged between his attorney and the State (a guilty plea and first-offender status). In response to a question as to how he advised his clients regarding a guilty plea, the attorney testified: "I generally discuss the nature of the charge with them. I discuss with them, based on what they tell me and what I find out and what I think their case is about and what I think the probable consequences of the case are. I discuss with them the things that generally are referred to in the plea itself regarding their right to a trial and right to call witnesses and that type stuff, and also discuss with them any negotiated plea that I have been able to work out with the District Attorney, and also the fact that that is just his recommendation and that the Judge does not have to go along with that recommendation." He also testified that he always advised his clients of the ramifications of first-offender status. When asked whether he is satisfied that a plea is freely and voluntarily made — that the client understands his alternatives — before advising a client to enter that plea, he stated: "I'm satisfied that they know . . . at

least within a general sense all the alternatives available to them. When I say in a general sense, certainly, I don't go over the rules of evidence and things like that necessarily. . . . I go over generally . . . the options that are available and what that defendant can do. . . . [I]n terms of my representation, I feel like I can't represent someone . . . if I've not made a decision in my own mind that what he's doing [in entering a guilty plea] is of his own free will; but in terms of whether or not the plea meets the minimum requirements of the constitution or otherwise, I feel like it's the Judge's decision, but like I said just in terms of my representation of the client, I satisfy myself to that."

Although there appears of record no formal motion by defendant to withdraw his guilty plea, his challenge here to the validity of that guilty plea is of the same effect. Accordingly, since a ruling on a motion to withdraw a guilty plea after pronouncement of sentence is always within the sound discretion of the trial court, so too the ruling of the trial court in the case at bar. "But where there is any question as to the voluntariness of a guilty plea we will consult both the record and the transcript in accordance with the criteria of *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969)." *Harrell v. State*, 145 Ga. App. 93, 94 (243 SE2d 611) (1978). On all factual issues raised by the evidence in a hearing challenging the validity of a guilty plea, the trial court is the final arbiter. See *Marshall v. State*, 128 Ga. App. 413 (6) (197 SE2d 161) (1973); *Holston v. State*, 103 Ga. App. 373 (2) (119 SE2d 302) (1961). See also *Galbreath v. State*, 130 Ga. App. 179, 180 (202 SE2d 562) (1973). Viewing the State's unchallenged evidence in light of the foregoing legal parameters, we are unable to find as a matter of law that the trial court abused its discretion in upholding the validity of defendant's guilty plea. Accord *Bailey v. Baker*, 232 Ga. 84 (4) (205 SE2d 278) (1974); *Huff v. Barnett*, 230 Ga. 446 (197 SE2d 345) (1973). See also *Goodman v. Davis*, 249 Ga. 11 (1) (287 SE2d 26) (1982). Compare *Andrews v. State*, 237 Ga. 66 (1) (226 SE2d 597) (1976); *Kirby v. State*, 170 Ga. App. 11 (1) (316 SE2d 23) (1984); *Goss v. State*, 161 Ga. App. 539 (288 SE2d 253) (1982). Therefore, this enumeration of error presents no ground for reversal.

3. Defendant's second enumeration of error asserts a failure to show that the subject guilty plea was entered with his consent and, if it was, that such consent was given intelligently and voluntarily. In light of our holding in Division 2, supra, this enumeration has no merit.

4. The argument asserted in defendant's third enumeration of error is entirely specious. See *Crawford v. State*, 166 Ga. App. 272 (1) (304 SE2d 443) (1983).

5. Defendant's fourth enumeration cites as error the trial court's imposition of an additional ten years to serve in the penitentiary ef-

fective as of the date of the revocation of first-offender status and entry of adjudication of guilt. Defendant's original "sentence" was five years to serve, but this was probated pursuant to the First Offender Act. This "sentence" also provided: "If such probation is revoked, the court may order the execution of the sentence which was originally imposed, or any portion thereof, and no part of the time that the defendant has been on probation need be considered as any part of the time that he shall have been sentenced to serve." Defendant has the right to rely upon the terms of the sentencing document, there being no evidence of record that defendant was informed *at the time of sentencing* of anything contradictory thereof. See *Stephens v. State*, 245 Ga. 835, 838 (268 SE2d 330) (1980); *Huff v. McLarty*, 241 Ga. 442, 445 (246 SE2d 302) (1978). Therefore, the imposition of the new, ten-year, additional sentence, being greater than that originally imposed, must be vacated as violative of the original sentencing order. See *Saladine v. State*, 165 Ga. App. 836 (302 SE2d 739) (1983); *Johnson v. State*, 161 Ga. App. 506 (3) (288 SE2d 366) (1982). We pause to note, however, that unlike the situations in *Stephens, Saladine,* and *Johnson,* supra, under the terms of the original sentencing document in the case at bar, the trial court is not required to credit defendant with any time served on his first-offender probation.

6. Our holding in Division 5, supra, renders moot defendant's final enumeration of error.

In summary, the judgment of the trial court revoking defendant's first-offender probation is affirmed. The sentence imposed as a result of same is vacated, and this case is remanded for resentencing not inconsistent with this opinion.

*Judgment revoking probation affirmed; sentence vacated and case remanded for resentencing. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Benham, JJ., concur. Beasley, J., concurs in part and dissents in part.*

BEASLEY, Judge, dissenting in part.

We granted defendant's discretionary appeal in part to address a question of first impression: whether an order terminating probation under which a defendant is "placed" by authority of the First Offender Act falls within the "[a]ppeals from orders revoking probation" language of OCGA § 5-6-35 (a) (5), thereby requiring an application for appeal, or whether a direct appeal would lie. The subsection 5 category of cases was added by the legislature, along with other categories expanding the discretionary appeal route, in 1984.

In an appeal from a revocation of a probated sentence following a trial or guilty plea, a defendant has already had the right to appeal directly all aspects of the formal adjudication of guilt as well as of the

sentence which is bottomed on the judgment of guilt. Later, when he is found to have violated the terms of the probation, a matter subsequent to the conviction, and subject to the "slight evidence" rule, he may apply for application for discretionary review of the revocation order. Such is not the identical case with an appeal from a termination of probation under the First Offender Act. In this latter type of case, although a First Offender could directly appeal the first sentence imposed by agreement, OCGA § 42-8-64, there is no *adjudication of guilt* from which to appeal until the court determines that there has been a violation of First Offender status and proceeds to enter a judgment of guilt. Thus, such an appeal is from more than a mere "order revoking probation." It is actually an appeal also from the judgment of guilt itself as well as from the new sentence. These are entered after the earlier-ordered sentence has been frustrated. The resentencing may actually be more severe than the consented-to sentence. *Beasley v. State*, 165 Ga. App. 160 (299 SE2d 886) (1983); *Hogan v. State*, 158 Ga. App 495, 496 (2) (280 SE2d 891) (1981); *State v. Wiley*, 233 Ga. 316, 318 (210 SE2d 790) (1974). There may be some limitation, of course, arising from the original agreement and that sentence. *Saladine v. State*, 165 Ga. App. 836 (302 SE2d 739) (1983); *Stephens v. State*, 245 Ga. 835 (268 SE2d 330) (1980); *Johnson v. State*, 161 Ga. App. 506 (288 SE2d 366) (1982). At any rate, the new sentence is based on an just-arrived at adjudication of guilt, whereas a mere order revoking probation proceeds from a sentence based on a judgment entered previously and the appeal is only from the order. The important distinction was recognized in *Beasley v. State*, supra. It is illustrated by this very case, where appellant challenges also the validity of the adjudication of guilt, claiming that his 1980 guilty plea was neither voluntary and intelligent nor accompanied by a finding that a crime had occurred.[1] This extends beyond inquiry into whether he violated the terms of probation and the legality of the length of the new sentence. Accordingly, appeals of this nature do not fall within the scope of OCGA § 5-6-35 (a) (5) in my view; they are directly appealable. OCGA § 5-6-34 (a) (1).

Could we put this case in the right track? There appears to be no authority for "transferring" this case to direct appeal status. The statutory procedure for appealing does not provide anything to the effect that if the losing party below follows the wrong appellate course, albeit in a timely fashion as to the course he chooses, his case will be shifted to the proper course by the court appealed to. Although the 1983 Constitution of Georgia, Art. VI, Sec. I, Par. VIII

---

[1] He could have appealed these two matters when initially sentenced, as a First Offender, OCGA § 42-8-64, but that would not foreclose his contesting them now as infecting the adjudication of guilt because it has just been entered.

provides for the transfer of cases to the appropriate *court* when jurisdiction is found to be elsewhere, there is no similar provision in the appellate practice, as amended, for transfer of discretionary appeals to direct appeals or vice versa.

To conclude that such transfers are proper would have undesirable consequences. It is only after the grant of discretionary appeal that appellant must file his notice of appeal below. OCGA § 5-6-35 (g). If an appeal were transferred from the discretionary statutory track to the direct appeal track, a change in the time requirements would be effected. A party could successfully delay the effects of a judgment by intentionally filing improperly. Moreover, a party who mistakenly misfiled would be rewarded by obtaining a delay from the effects of judgment. In addition, the discretionary appeal procedure allows the filing of an application to act as a supersedeas. OCGA § 5-6-35 (h). Of course, the winner could require the posting of a supersedeas bond, but that is not the equivalent of recovery of judgment. Finally, for those who erroneously filed a direct appeal, we would have to give appellants direction to follow the discretionary route and establish deadlines for compliance.

It is not manifest that this is what the legislature intended. Nor has this court or the Supreme Court adopted this approach and transferred erroneously filed discretionary appeals to direct appeals or the opposite. Appeals that have not been filed in compliance with OCGA § 5-6-35 have been dismissed. See, e.g., *Russo v. Manning*, 252 Ga. 155 (312 SE2d 319) (1984); *Strickland v. Strickland*, 252 Ga. 218 (312 SE2d 606) (1984); *In the Interest of J. E. P. III*, 252 Ga. 520 (315 SE2d 416) (1984); *Beckman v. Black*, 170 Ga. App. 193 (316 SE2d 784) (1984); *Burnett v. Coleman*, 170 Ga. App. 394 (317 SE2d 546) (1984).[2]

Where there is an issue of statutory interpretation of OCGA § 5-6-35, dismissal for choosing the track later construed as the wrong one can be avoided by simultaneously filing both a direct appeal and an application for appeal. Defendant did not do so here. Ordinarily, failure to follow the correct appellate procedure would work a dismissal because under such circumstances we would not have jurisdiction to hear the merits. But where the choice is based on a reasonable interpretation of unclear portion of the statute which has not been previously judicially construed, and the choice is deemed by the court

---

[2] But see *Wright v. Hanson*, 248 Ga. 523 (283 SE2d 882) (1981), which concluded that although the filing of an application for review of a child custody habeas corpus proceeding was improper, the court had jurisdiction since the application was granted and notice of appeal was timely filed. This case was decided under the former OCGA § 5-6-35, and is no longer good law under amended OCGA § 5-6-35. *Leonard v. Benjamin*, 253 Ga. 718 (324 SE2d 185) (1985).

as a matter of law to have been wrong, the court's statutory construction ought to be given prospective application only. Otherwise unnecessary injustice may result. See dissent in *Noggle v. Arnold*, 177 Ga. App. 119 (338 SE2d 763) (1985).

Thus I would reach the merits here and, in doing so as to those matters, agree with the majority.

DECIDED NOVEMBER 26, 1985 —
REHEARING DENIED DECEMBER 19, 1985.

*Roger L. Curry*, for appellant.

*Frank C. Winn, District Attorney, Richard S. Thompson, Assistant District Attorney*, for appellee.