## S96A0942. BOWERS v. MOORE.
(471 SE2d 869)

SEARS, Justice.

The State appeals from the grant of habeas relief to Petitioner Willie James Moore. Because we find that guilty pleas entered by Moore to separate charges in 1973 and 1978 were invalid under *Boykin v. Alabama,*[1] we affirm.

In 1973, Moore pled guilty to the offense of aggravated assault before the Superior Court of Clayton County. In 1978, Moore again pled guilty to another charge of aggravated assault, again before the Clayton County Superior Court. Moore was represented by different counsel at both plea hearings.[2]

Regarding Moore's 1973 guilty plea, the transcript of the plea colloquy shows that the Superior Court judge did not inform Moore of his right to confront adverse witnesses or his privilege against self-incrimination, should he elect to proceed to trial. The attorney representing Moore at the 1973 hearing has since deceased; there is no evidence that he informed Moore of these constitutional rights before entry of the guilty plea. No plea form was submitted contemporaneously with the 1973 guilty plea.

Regarding the 1978 guilty plea, the plea colloquy transcript shows that the judge did not inform Moore that he had the right to confront adverse witnesses and a privilege against self-incrimination, should he elect to go to trial. The judge did not inquire whether Moore's counsel had discussed the case with him, or had informed

---

[1] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

[2] Moore's petition for habeas relief was filed after his conviction in the United States District Court for the Northern District of Georgia of being a felon in possession of a firearm, in violation of 18 USC § 922 (g). For that conviction, Moore was sentenced to fifteen years under the Armed Career Criminal Act, 18 USC § 924 (e), which enhances the punishment given to § 922 (g) offenders previously convicted of three or more violent felonies. Two of the prior convictions relied upon by the district court in sentencing Moore were based upon the 1973 and 1978 guilty pleas.

Moore of the constitutional rights he would relinquish by pleading guilty. Moore was not informed by the judge that he was presumed to be innocent until proven guilty, nor did the judge ask whether his guilty plea was made under the influence of drugs or alcohol. The judge did not require the State to submit for the record a factual basis for the plea. The elements of Moore's crime and the minimum and maximum penalties were not explained to him, and no inquiries were made about the existence of a plea agreement, or whether Moore had been coerced or threatened before entering the guilty plea. In support of his habeas petition, Moore submitted the affidavit of the lawyer who represented him at the 1978 plea proceeding, who testified that he probably did not inform Moore before he pled guilty of either his right to confront adverse witnesses or his right against compulsory self-incrimination.

In his habeas petition, Moore argued that it was clear from the face of the plea colloquies that the 1973 and 1978 guilty pleas were unconstitutional under *Boykin v. Alabama,* supra. Moore also argued in an amended petition that prior to entry of his 1978 plea, the State had determined his IQ to be 60, establishing that he was incapable of making a knowing, intelligent, and voluntary plea of guilty. Moore also argued in his amended petition that he was unconstitutionally denied the effective assistance of counsel in 1978.

As found by the habeas court, the transcripts of the plea colloquies and affidavit testimony submitted in support of Moore's petition were unrefuted by the State, and unequivocally established that the 1973 and 1978 guilty pleas were invalid under *Boykin,* supra. As regards Moore's amended petition, the habeas court held that the Georgia Department of Corrections' determination in 1973 that Moore had an IQ of 60 placed him in the mentally retarded range of intellectual functioning,[3] further evidencing his inability to enter acceptable guilty pleas. Finally, the habeas court ruled that Moore's allegation in the amended petition of ineffective assistance of counsel was rendered moot by the court's other rulings. The petition for relief was granted, and the convictions were ordered vacated.

1. A plea of guilty is more than a mere confession of certain acts, "it is itself a conviction; nothing remains but to give judgment and determine punishment."[4] The waiver of constitutional rights that occurs when a plea of guilty is entered is so great that it "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences."[5]

---

[3] See *Zant v. Pitts,* 263 Ga. 529 (436 SE2d 4) (1993); OCGA § 17-7-131 (a) (3).

[4] *Boykin,* 395 U. S. at 242.

[5] Id., 395 U. S. at 243-244.

A number of federal and state constitutional rights are implicated when determining whether the entry of a guilty plea is knowing, voluntary, and intelligent. These include such fundamental rights as the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers.[6] It is established that a waiver of these fundamental rights will not be presumed by a silent record.[7] Rather, it is incumbent upon the trial court to ensure that a defendant understands that, by pleading guilty, he is relinquishing constitutional rights to which he is otherwise entitled.

Once a prisoner raises a question concerning the validity of a guilty plea, the burden is on the State to show that the plea was voluntarily, knowingly, and intelligently made.[8] The State may accomplish this either by making a showing on the record that the defendant was cognizant of his rights and waiver thereof, or by the use of extrinsic evidence that shows affirmatively that the guilty plea was knowingly and voluntarily entered.[9] Unless the State makes this showing, however, a challenged guilty plea will be considered invalid.[10]

2. Our review of the transcripts of the plea colloquies between Moore and the trial court confirms that, prior to entering his guilty pleas at both hearings, Moore was not advised of his constitutional rights — specifically his right to confront witnesses and privilege against self-incrimination. In fact, the plea colloquy transcripts are entirely silent on these issues, and the State has offered no extrinsic evidence to show that Moore's guilty pleas were knowing and voluntary. As explained, the waivers arising from a guilty plea will not be presumed from a silent transcript or record.[11] Hence, on the basis of the colloquy transcripts alone, combined with the absence of countervailing extrinsic evidence, the habeas court's ruling was correct.

Moreover, as noted by the habeas court, Moore's counsel testified by affidavit that at the 1978 plea hearing, he probably did not inform Moore of his right to confront adversary witnesses at trial or his right against compulsory self-incrimination, and Moore himself testified by affidavit that he was not advised of these rights at either of the proceedings. Again, this evidence is unrefuted by the State. Accordingly, it is undisputed that Moore was not informed of his rights under *Boykin*, thereby rendering his 1973 and 1978 guilty pleas neither knowing, intelligent, nor voluntary.

---

[6] Id., 395 U. S. at 243.

[7] Id.; *Breland v. Smith*, 247 Ga. 690 (2), 692 (279 SE2d 204) (1981).

[8] *Roberts v. Greenway*, 233 Ga. 473, 475 (211 SE2d 764) (1975).

[9] Id.

[10] *Boykin*, 395 U. S. at 242-243.

[11] See n. 7, supra, and accompanying text.

The State claims that the habeas court abused its discretion by making its ruling before the State had an opportunity to respond to the allegations raised in Moore's amended petition.[12] Insofar as this claim might relate to the allegation that Moore's IQ of 60 rendered him mentally retarded, leading the habeas court to conclude that there was "no doubt" he was incapable of knowingly and intelligently entering guilty pleas in 1973 or 1978, the validity of the habeas court's ruling is in no way dependent upon this finding. As explained above, solely on the basis of the other unrefuted evidence before the habeas court, the ruling was correct. The observation regarding Moore's mental deficiency merely fortifies that ruling. Furthermore, we note that the State places itself in a contradictory position by raising this argument, since it is the State's own mental evaluation of Moore that establishes his low IQ.

Insofar as the State complains it did not have an opportunity to respond to Moore's allegation regarding ineffective assistance of counsel, the habeas court correctly found that allegation to have been mooted by its ruling vacating the convictions.

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in the judgment only.*

DECIDED JULY 1, 1996.

*Michael J. Bowers, Attorney General, Marla-Deen Brooks, Beth Attaway, Assistant Attorneys General,* for appellant.
*Rise H. Weathersby, Brian Mendelsohn,* for appellee.

---

[12] This argument is at best dubious. The record shows that approximately five weeks elapsed between the hearing on Moore's petition and entry of the habeas court's final order, during which time the State did not respond to the amended petition or affidavit testimony, despite having been informed by the habeas court that the record would be left open so that it could do so.