## S98A0903. CAZANAS v. THE STATE.
### (508 SE2d 412)

HINES, Justice.

Luzardo Cazanas pled guilty to malice murder and was sentenced to life imprisonment. Because Cazanas is a native of Cuba and was represented as speaking little or no English, the trial court appointed an interpreter to translate for him during the plea and other court proceedings, and at meetings with his attorney. Cazanas

---

[6] Id.

filed a motion to withdraw his guilty plea on the ground that he did not enter it knowingly, intelligently, and with an understanding of its consequences. After an evidentiary hearing, the court denied Cazanas' motion. Cazanas contends that the court improperly denied withdrawal of the plea because at the plea hearing the interpreter did not fully and effectively translate the trial court's explanation of his rights and the consequences of his plea. He further asserts that the trial court erred in permitting his former attorney and interpreter to testify for the State at the hearing on his motion to withdraw the plea. For the reasons which follow, we affirm.[1]

When a defendant enters a plea of guilty, and subsequently challenges the validity of the guilty plea, the State may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary. *Bowers v. Moore*, 266 Ga. 893, 895 (1) (471 SE2d 869) (1996); *Roberts v. Greenway*, 233 Ga. 473, 475 (1) (211 SE2d 764) (1975). The trial court is the final arbiter of all factual issues raised by the evidence, *Dean v. State*, 177 Ga. App. 123, 126 (2) (338 SE2d 711) (1985), and after sentence is pronounced a guilty plea may be withdrawn only to correct a manifest injustice. Uniform Superior Court Rule (USCR) 33.12; *State v. Evans*, 265 Ga. 332, 336 (3) (454 SE2d 468) (1995).

1. Over Cazanas' objection, the State called his former trial lawyer to testify as to whether Cazanas understood the proceedings and his rights prior to entering his plea. Cazanas' plea interpreter was also called as a witness and asked to express her opinion as to whether Cazanas fully understood the plea proceedings. Cazanas contends that the court erred in allowing this testimony to be used as it violated the attorney-client privilege.

---

[1] On December 18, 1996, a Colquitt County grand jury indicted Cazanas for the malice murder and armed robbery of Ervin Antonio Gallo and for two counts of possession of a firearm during commission of the crimes. On May 9, 1997, Cazanas pled guilty to malice murder and was sentenced to life imprisonment on May 13, 1997; the same day an order of nolle prosequi was entered as to the remaining counts in the indictment. A notice of appeal to the Court of Appeals was filed on June 2, 1997, and the appeal was transferred to this Court on October 2, 1997. On November 14, 1997, that appeal (S98A0123) was stricken from the docket of this Court without prejudice to future appeals, and the case was remanded to the trial court for appointment of new post-conviction counsel. New counsel was appointed on November 21, 1997, and a motion for an out-of-time appeal was filed on November 26, 1997. Cazanas was granted an out-of-time appeal on December 2, 1997. On December 31, 1997, Cazanas filed a motion to withdraw guilty plea, or in the alternative, motion for new trial. The motion was denied on January 28, 1998. A notice of appeal was filed on February 20, 1998, and the appeal was docketed in this Court on March 13, 1998. The case was submitted for decision without oral argument on May 4, 1998.

But, the attorney-client privilege did not bar the testimony of Cazanas' former attorney and interpreter. A defendant who attacks the validity of a guilty plea in a subsequent habeas corpus proceeding on the grounds that he did not enter the plea knowingly and intelligently may not assert a claim of attorney-client privilege to block the testimony of the lawyer who represented him at the plea hearing. *Roberts,* supra at 477 (3); *Bailey v. Baker,* 232 Ga. 84, 86 (2) (a) (205 SE2d 278) (1974). Such a claim will be subject to an objective inquiry as to whether

> the position taken by the party goes so far into the matter covered by the privilege that fairness requires the privilege shall cease even when, subjectively, [the client] never intended that result . . . . "Courts earnestly pursuing reality would be hard put to justify a rule that would allow a defendant . . . to assert that his solemn pleas of guilty were negated for lack of accurate information of sentence consequences, then permit him to run a procedural trap play that would block the development of the plain truth . . . . Not only does this specious sophistry fail to protect confidential relationships, it trifles with the truth — it scoffs at justice. . . ."

*Bailey,* supra at 86 (2) (a), quoting with approval *United States v. Woodall,* 438 F2d 1317 (5th Cir. 1970).

This reasoning is equally compelling in this case. Cazanas himself raised the issue of the validity of the guilty plea on the grounds of lack of knowledge and understanding. Having made such an assertion, he cannot now invoke the privilege in order to block the introduction of evidence that would tend to establish the truth or falsity of the very matter that his assertions rest upon. By attacking the validity of the plea in this manner, Cazanas waived the privilege, and thus, the trial court did not err in admitting the testimony of his interpreter and attorney at the hearing on his motion to withdraw his guilty plea.

2. Cazanas further contends that he did not enter a knowing and intelligent plea because the interpreter was a native of Mexico and could not adequately translate the plea hearing proceedings into his native Cuban dialect. Cazanas introduced evidence that variations in grammar, syntax, and vocabulary exist among the dialects of the Spanish language which are spoken in different regions of the world. However, at the hearing on the motion to withdraw the plea, the State offered extrinsic evidence demonstrating that the defendant made an informed and voluntary plea. *Bowers,* supra at 895 (1); *Roberts,* supra at 475 (1).

The trial court was authorized to find that any differences in the dialects spoken by the interpreter and Cazanas did not prevent Cazanas from obtaining a meaningful understanding of his constitutional rights or the plea consequences. Although Cazanas did ask that a friend interpret during some meetings with his lawyer, there is no evidence that Cazanas expressed any dissatisfaction with or difficulty in communicating through his court-appointed interpreter at any time prior to sentencing. This interpreter, who handled the plea proceedings, testified that she was fluent in both the Mexican and Cuban dialects of Spanish, and she affirmed that she was able to effectively communicate with Cazanas, and that Cazanas appeared to understand most of what was said in English as well. Furthermore, Cazanas failed to identify any specific portions of the trial court's explanation of his rights at the plea hearing where dialectical differences would have impeded his understanding of the proceedings. In fact, another interpreter who testified at the hearing on the motion to withdraw the plea agreed that there was not a substantial difference between the Cuban and Mexican dialects in the translation of the rights to remain silent, to a trial by jury, to be represented by an attorney, and the fact that the State must prove guilt.

Cazanas also argues that the plea interpreter did not fully translate the court's explanation of his rights. He contends that the translator only told him that "the judge is reading your rights." He urges that, because the court accepted his plea during a group plea hearing in which he was the only non-English speaking defendant, the court could not determine whether Cazanas understood and appreciated his rights and the consequences of his plea. But that is not so.

Because only the English-language portions of the plea proceeding were transcribed, the Spanish translation cannot be examined; however, the transcript of the conduct of the plea proceeding as well as the extrinsic evidence at the motion hearing are telling. The transcript of the plea hearing shows that as a threshold matter the interpreter took an oath to accurately interpret all of the court's questions and statements to Cazanas and all of Cazanas' responses to the court. It also reveals that the court was sensitive to Cazanas' reliance on the interpreter and ensured that the interpreter had adequate time to translate each and every right related by the court. Indeed, the transcript reflects that there was an interpretation to Cazanas following each and every statement by the court to Cazanas prior to Cazanas entering his plea, as well as frequent affirmations by the interpreter that Cazanas understood what was asked or related. Furthermore, at the motion hearing, the plea interpreter testified that she regularly interpreted the Spanish language for the Colquitt County court system; that Cazanas' trial counsel talked with her and was satisfied that she sufficiently understood legal concepts and ter-

minology; and that she had accurately related each legal right and concept to Cazanas, and that Cazanas understood. Thus, the trial court was within its authority to resolve this factual issue adversely to Cazanas.

Cazanas has failed to show that withdrawal of his plea was necessary to correct a manifest injustice. USCR 33.12; *State v. Evans,* supra.

*Judgment affirmed. All the Justices concur.*

SEARS, Justice, concurring.

Because I am satisfied in this case that the state met its burden of showing that appellant's guilty plea was knowingly and intelligently entered by eliciting testimony from both appellant's defense counsel and the interpreter who assisted at the guilty plea hearing, I concur in the affirmance of appellant's conviction. I write separately, however, for two reasons.

First, I note that appellant's guilty plea was accepted during a group plea involving several defendants, all of whom were accused of different crimes. I believe that a group guilty plea hearing is an inappropriate forum for a trial court to accept a defendant's plea of guilty to a serious charge such as malice murder. Because of the seriousness of both the charge involved and the resulting sentence, I believe that a trial court should engage in a one-on-one colloquy with such a defendant, thereby better ensuring the constitutional integrity of the plea-making process. This is especially true in cases such as this one, involving a non-English speaking defendant, who must rely upon an interpreter to understand the nature of the proceedings against him or her, and the consequences of a guilty plea.

Second, in cases where a trial court accepts a guilty plea from a non-English speaking defendant who is assisted by an interpreter, I believe it is a good practice for the trial court to inquire on the record, at the end of the plea colloquy required by USCR 33, whether the defendant has been able to effectively communicate with the interpreter, and whether there have been any communications with the interpreter that the defendant did not understand. If this inquiry is made on the record, reviewing courts will not have to rely upon the recollections of defense attorneys and interpreters in determining whether a guilty plea was made in compliance with *Boykin v. Alabama.*[2] Instead, reviewing courts will have the benefit of a defendant's own representation when making the relevant inquiry under *Boykin,* which is whether a defendant freely and voluntarily entered a guilty plea with an understanding of both the nature of the charges

---

[2] 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

against him or her and the consequences of the plea.[3]

DECIDED NOVEMBER 9, 1998.

*Short & Fowler, Brian A. McDaniel,* for appellant.
*J. David Miller, District Attorney, Charles M. Stines, Assistant District Attorney,* for appellee.

---

[3] *Goodman v. Davis*, 249 Ga. 11, 13 (287 SE2d 26) (1982).