A08A0485. LUVIANO v. THE STATE.
(662 SE2d 770)

PHIPPS, Judge.

Jesus Luviano pled guilty to the indicted charges of trafficking in methamphetamine,[1] conspiracy to traffic in methamphetamine, and influencing a witness. After merging the drug counts, the trial court sentenced Luviano for trafficking in methamphetamine and influencing a witness. Luviano subsequently filed a motion to withdraw his guilty plea, asserting he did not enter it knowingly and voluntarily. The court denied the motion after an evidentiary hearing, and

---

[1] The indictment alleged "more than 400 grams of a mixture containing methamphetamine."

Luviano appeals. Because Luviano has not demonstrated that the denial of his motion constitutes manifest injustice, we affirm.

> When a defendant enters a plea of guilty, and subsequently challenges the validity of the guilty plea, the State may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea, or by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary. The trial court is the final arbiter of all factual issues raised by the evidence, and after sentence is pronounced a guilty plea may be withdrawn only to correct a manifest injustice.[2]

The plea hearing transcript shows that an interpreter was sworn by the trial court to translate for Luviano the plea proceedings from English to Spanish and from Spanish to English.[3] The prosecutor recited the factual basis for the case. Thereafter, in response to the court's inquiry, Luviano stated that the petition to enter a plea of guilty had been read to him, that he understood the petition's contents, that no one had induced him to plead guilty by any threat or promised benefit, and that he was freely and voluntarily pleading guilty. He then added, "I want this nightmare to be over." But when the court asked him whether he was guilty of the trafficking and conspiracy charges, Luviano answered no, stating, "I am guilty of being there at the place where all this happened." Because Luviano again so asserted, the court remarked that Luviano was not answering to its satisfaction that he "knows what he is doing and he is guilty of the offense[s]"; further, the court stated that if Luviano wanted to enter an *Alford*[4] plea, he could do so. The court then granted Luviano's attorney's request for a recess to explain an *Alford* plea to Luviano.

When the hearing reconvened, Luviano's attorney reported to the court that he had explained to Luviano during the recess the nature of an *Alford* plea and that Luviano was ready to proceed. The court announced that it would start the questioning anew. In

---

[2] *Cazanas v. State*, 270 Ga. 130, 131 (508 SE2d 412) (1998) (citations omitted).

[3] The petition to enter plea of guilty stated that Luviano was able to read and write "Spanish only."

[4] See *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970); *Crowe v. State*, 265 Ga. 582, 585-586 (4) (458 SE2d 799) (1995) ("An individual accused of crime may voluntarily, knowingly, and understandably consent to the imposition of a . . . sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."), citing *Alford*, supra at 37.

response to the court's inquiry, Luviano stated that he wished to enter such a plea to the counts of trafficking in methamphetamine, conspiracy to traffic in methamphetamine, and influencing a witness. The court stated to Luviano that the *Alford* case allows a person to maintain his innocence and enter a plea of guilty to a felony if that person thinks that the evidence in the case is so strongly against him that he feels like it is in his best interest to enter a plea of guilty rather than facing trial. Luviano affirmed, "I want to plead guilty this way, sir." Responding to other questions from the court, Luviano stated, among other things, that the interpreter had read to him in Spanish the guilty plea petition; that the rights outlined in the petition had been explained to him in Spanish; that he understood all of the rights he was waiving by pleading guilty; that he had signed his name to the petition; that no one had threatened him or promised him anything to make him plead guilty; and that he had been given no guarantee as to the sentences that the court would impose upon him. After stating that the conspiracy count would merge with the trafficking count, the court advised Luviano of the maximum penalties for the counts of trafficking and influencing a witness. Thereafter, the trial court accepted Luviano's *Alford* plea as knowingly and voluntarily given.[5] For trafficking in methamphetamine, the court imposed upon Luviano the mandatory imprisonment sentence of twenty-five years to serve and a $1,000,000 fine;[6] for influencing a witness, the court sentenced him to serve five concurrent years.

At the hearing on his motion to withdraw his guilty plea, Luviano testified that he had not understood the plea proceedings, that he was confused in the conference with his attorney during the recess, that he had understood only some of what the judge and interpreter were saying, and that they were speaking too fast. Luviano further testified that the majority of his responses to the court's inquiry after the recess had consisted merely of "Yes" or "Yes, Sir" because his attorney had advised him during the recess that if he did not answer the court's questions "correctly" and thus went to trial before a jury, he would face at least 25 years of imprisonment.

To meet its burden, the state relied upon the transcript of the plea hearing, along with testimony given at the motion hearing by the attorney who had represented Luviano at the plea hearing. The attorney testified that, over the course of the two years preceding the

---

[5] The court also found a sufficient factual basis for the plea.

[6] See OCGA § 16-13-31 (f) (3) (if the quantity of the mixture containing methamphetamine is "400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million").

plea hearing, he had discussed extensively with Luviano the charges, the evidence against him, as well as possible defenses and their weaknesses; the mandatory minimum sentence he would face with a guilty verdict on the trafficking charge; and the state's offer of a negotiated plea (on a reduced charge, with a sentencing recommendation of 30 years, to serve 15), which Luviano had rejected. On the day of the plea hearing, the attorney appeared in court expecting to try the case before a jury, but Luviano then told him that he wanted to end the case by pleading guilty. The attorney explained to Luviano that the negotiated plea offer was no longer available; that by entering a nonnegotiated guilty plea, he would be subject to the same sentencing provisions that he would face with guilty verdicts; and that, therefore, Luviano "couldn't do a whole lot worse if he tried his case anyway." Luviano reaffirmed his decision. As the attorney and the interpreter were assisting Luviano in completing the guilty plea petition, Luviano did not indicate that he did not understand any part of the petition.

The attorney further testified about the conference he had held with Luviano during the plea hearing recess. The interpreter attended the conference and translated what was being said. The attorney discussed again with Luviano the evidence against him, gave Luviano his assessment that an acquittal was not likely, and advised Luviano that he still could go to trial. The attorney also explained an *Alford* plea to Luviano. The attorney told Luviano that he could enter such a plea for the purposes of not going to trial if he believed that there was enough evidence to prove his guilt beyond a reasonable doubt. Luviano appeared to the attorney to comprehend his options and then stated that he wished to enter an *Alford* plea. The attorney denied telling Luviano that he was required to answer the court's questions that would follow in any certain way.

"The standard for withdrawal of a guilty plea following sentencing is 'manifest injustice.' "[7]

> The test for manifest injustice will by necessity vary from case to case, but it has been said that withdrawal is necessary to correct a manifest injustice if, for instance, a defendant is denied effective assistance of counsel, or the guilty plea was entered involuntarily or without an understanding of the nature of the charges.[8]

In light of the plea hearing transcript and the attorney's testimony

---

[7] *Shaheed v. State*, 276 Ga. 291 (2) (578 SE2d 119) (2003) (footnote omitted).
[8] *Maddox v. State*, 278 Ga. 823, 826 (4) (607 SE2d 587) (2005) (citation and punctuation omitted).

at the motion hearing, the trial court was authorized to reject Luviano's claim that the state had failed to prove that his plea had been knowing and voluntary.[9] That the interpreter did not testify at the motion hearing provides no basis for reversal in this case. Nor does Luviano's suggestion on appeal that the interpreter was not "experienced, certified, or even capable of translating adequately in such an important matter as a plea hearing." "Inasmuch as appellant has failed to show the existence of the manifest injustice necessary to authorize post-sentencing withdrawal of his guilty plea, the trial court did not err when it refused to permit him to withdraw his guilty plea to the . . . charge[s]."[10]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED MAY 23, 2008.

*Nicki N. Vaughan*, for appellant.
*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.

[9] See *Cazanas*, supra; *Martinez v. State*, 258 Ga. App. 102, 103-104 (1) (572 SE2d 748) (2002); *DeLapuente v. State*, 182 Ga. App. 808 (357 SE2d 155) (1987).
[10] *Maddox*, supra at 827 (4).