## S09A0069. BULLARD v. THOMAS.
### (678 SE2d 897)

HINES, Justice.

This Court granted Michael T. Bullard's application for a certificate of probable cause to appeal the denial of habeas corpus relief. For the reasons that follow, we affirm the decision of the habeas court.

1. Bullard was indicted on eight counts of burglary, and on January 24, 2000, he pled guilty to five of those counts; an order of nolle prosequi was entered as to the other three counts. Bullard was sentenced to five terms of twenty years in prison, to be served concurrently. At Bullard's plea hearing, three other defendants also pled guilty to various charges; none of those charges was related to Bullard's burglary charges. In 2007, Bullard petitioned for a writ of habeas corpus, alleging that his pleas were not knowingly and voluntarily made, primarily asserting that he did not understand the rights he was waiving as a result of his pleas, as required by *Boykin v. Alabama*, 395 U. S. 238, 243 (89 SC 1709, 23 LE2d 274) (1969).

> [T]he entry of a guilty plea involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. It is the duty of a trial court to establish that the defendant understands the constitutional rights being waived, and the record must reveal the defendant's waiver of those constitutional rights. *Boykin v. Alabama*, (supra). Once a petitioner in a habeas proceeding challenges the validity of a guilty plea, the State has the burden to demonstrate that the plea was voluntarily, knowingly and intelligently made. The State can accomplish this by showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or adding to a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

*Arnold v. Howerton*, 282 Ga. 66 (646 SE2d 75) (2007). Bullard was represented by counsel at his plea hearing, but the attorney who

signed his plea forms died three months after the pleas. A second attorney had appeared at the plea hearing with Bullard, but she was not a witness at the habeas corpus hearing. Accordingly, the State attempted to meet its burden by introducing, inter alia, the transcript of the plea hearing and a form which Bullard signed stating that he understood the nature of the charges against him, and understood that by pleading guilty, he was waiving, inter alia, the "right to a trial by jury and right to counsel at said trial," the "right not to incriminate yourself," and the "right to confront witnesses against you."

Bullard contends that such a form is insufficient to show he understood the rights he was waiving, citing as authority *State v. Hemdani*, 282 Ga. 511 (651 SE2d 734) (2007). Although the details of the form used in that case are not stated in the *Hemdani* opinion, in any event, there are crucial differences between Bullard's case and *Hemdani*. First, in *Hemdani*, the State failed to provide a transcript of the plea hearing, id. at 512; here, it did provide a transcript. And in *Hemdani*, the habeas court determined that the record failed to show that the *Boykin* requirements had been met; on the more extensive record here, the habeas court ruled that Bullard had been advised of his *Boykin* rights.

Bullard asserts that plea hearings involving multiple defendants cannot meet *Boykin* requirements without a one-on-one colloquy. Multiple defendant plea hearing procedures have been criticized. See *Cazanas v. State*, 270 Ga. 130 (508 SE2d 412) (1998) (Sears, J., concurring); *Shabazz v. State*, 259 Ga. App. 339, 341 (2) (577 SE2d 45) (2003). But, group plea hearings are not per se impermissible. See *Lamb v. State*, 278 Ga. App. 97, 100 (2) (628 SE2d 165) (2006). The question remains whether Bullard's pleas were freely and voluntarily made. See *Cazanas*, supra at 131; *Lamb*, supra; *Isaac v. State*, 237 Ga. App. 723, 726 (2) (516 SE2d 575) (1999).

During the hearing on his petition for a writ of habeas corpus, Bullard testified that, at his plea hearing, he felt "railroaded," threatened by a more extensive sentence, and "was never explained the fundamentals of any of that." He also testified that he did not respond to any questions that were posed to the defendants collectively, among which were whether the defendants understood that by pleading guilty, each was waiving the "right to trial by jury," the "right to confront witnesses against yourself," and the "right not to incriminate yourself and that by pleading not guilty or remaining silent and not entering a plea, you would obtain a trial by jury." However, after each of these questions, the transcript of the plea hearing shows: "(Defendants respond affirmatively.)"

Nonetheless, Bullard contends that the transcript cannot be relied upon to rebut his testimony at the habeas hearing, and

accordingly does not show that he indicated to the trial court at the plea hearing that he understood the rights he was forgoing. In this regard, Bullard points to one point in the transcript when, after a question addressing the waiver of the right to counsel, the trial court said: "Wait a minute. This man didn't say nothing [sic]. Do you want to plead guilty, sir?" At that point, Bullard, individually, responded yes, and the court admonished him to answer questions or sit down, to which he responded "yes, sir."[1] Prior to this point, the transcript of the hearing shows, after each question, the notation: "(Defendants respond affirmatively.)" As to all subsequent questions, including those pertaining to the right to avoid self-incrimination and the right to confront witnesses, the transcript likewise shows: "(Defendants respond affirmatively.)" Bullard contends that the trial court's action of calling upon him to respond despite the fact that the transcript states that prior questions were responded to by all defendants shows that the transcript cannot be trusted to accurately reflect what occurred in the courtroom.

We conclude that, rather than suggest that the transcript cannot be relied upon, the trial court's action shows that the court was clearly paying attention to the responses, and that, had Bullard failed to verbally respond to further questions, undoubtedly the court would have again taken action. We also note that Bullard did not make any claim in the trial court that the transcript did not accurately reflect what occurred at the plea hearing, and did not pursue any remedy therein to correct an inaccurate transcript. See OCGA § 5-6-41 (f). This Court will not presume that the transcript is inaccurate, nor did the habeas court so presume. Rather, the habeas court credited the transcript over Bullard's subsequent testimony, which the court was certainly authorized to do, especially as Bullard testified during the habeas hearing that he did not "remember the exact occurrence of events" at the plea hearing. The habeas court found that Bullard was advised of his *Boykin* rights at his plea hearing and that he stated that he understood that he was giving up those rights; the record supports that conclusion, and the habeas court's finding is not clearly erroneous. See *Schofield v. Meders*, 280 Ga. 865, 868 (2) (632 SE2d 369) (2006).

At the time of his plea hearing, Bullard had graduated from high school, had attended college, and could read and write English. When the prosecutor stated that Bullard was pleading guilty to four counts of burglary, Bullard corrected him and said: "Five counts, sir." The record in this case supports the habeas court's ruling that Bullard

---

[1] At this point, a question regarding understanding the waiver of the right to a trial by jury and to counsel at that trial was again posed.

was advised of, and understood, his *Boykin* rights.[2]

2. Bullard asserts that trial counsel did not provide effective assistance at his plea hearing. However, he did not raise any such issue in his habeas corpus proceeding and this asserted enumeration of error presents nothing for appellate review. *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991). See also *Meadows v. Settles*, 274 Ga. 858 (1) (561 SE2d 105) (2002).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 15, 2009.

*Hecht, Mack & Harris, Gregory K. Hecht, Jon W. Jordan, Mack & Harris, Robert L. Mack, Jr.*, for appellant.

*Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.

---

[2] Bullard also asserts that he did not have an understanding of the nature of the charges against him. See *Green v. State*, 265 Ga. 263 (1) (454 SE2d 466) (1995). He relies upon the fact that at the plea hearing, when he was individually addressed regarding the charges that he faced, the element of the crime of burglary of entering a dwelling house of another "without authority" was specifically referenced as to only one of the five burglary counts. But, the five counts each had the same legal elements, and it was clear that the element of entering "without authority" pertained to all counts, as did the element of doing so with the intent to commit a theft. See OCGA § 16-7-1 (a).