In the Supreme Court of Georgia

Decided: November 24, 2014

S14A1155. LEJEUNE v. McLAUGHLIN.

BLACKWELL, Justice.

In November 2005, Michael Lejeune pleaded guilty to murder, was convicted upon his plea, and was sentenced to imprisonment for life without the possibility of parole. Years later, Lejeune filed a petition for a writ of habeas corpus, alleging that his plea was invalid because, he said, he never was advised that, if he instead had insisted upon a trial, he could not have been compelled at that trial to testify against himself. Following an evidentiary hearing, the habeas court denied his petition. Lejeune appeals,[1] and we vacate the decision of the habeas court and remand for further proceedings consistent with this opinion.

1. To properly form the basis for a judgment of conviction, a guilty plea must be voluntary, knowing, and intelligent. Brady v. United States, 397 U. S. 742, 748 (I) (90 SCt 1463, 25 LE2d 747) (1970). See also Hicks v. State, 281

---

[1] Lejeune timely filed an application for a certificate of probable cause to appeal from the decision of the habeas court, see OCGA § 9-14-52, and we granted that application.

Ga. 836, 837 (642 SE2d 31) (2007). For a plea to be knowing and intelligent, the accused must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. Brady, 397 U. S. at 748 (I). The circumstances and consequences of which the accused must be aware include the essential constitutional protections that the accused would enjoy if he instead insisted upon a trial, protections that he waives by pleading guilty and consenting to judgment without a trial. See Schneckloth v. Bustamonte, 412 U. S. 218, 238 (II) (C) (93 SCt 2041, 36 LE2d 854) (1973) ("Guilty pleas have been carefully scrutinized to determine whether the accused knew and understood all the rights to which he would be entitled at trial, and that he had intentionally chosen to forego them." (Footnote omitted.)). See also Loyd v. State, 288 Ga. 481, 485 (2) (b) (705 SE2d 616) (2011). As the United States Supreme Court explained in Boykin v. Alabama, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969), among these essential protections is the constitutional privilege against compulsory self-incrimination. See id. at 243. In this case, Lejeune alleged that his plea was invalid because no one advised him of his privilege against self-incrimination.[2]

_____

[2] Lejeune never alleged that his plea was not a voluntary expression of his own choice, that he did not understand the nature of the case against him, nor that he entered his plea without understanding the other constitutional rights that he would have been afforded at

2

In its order denying the petition for a writ of habeas corpus, the habeas court proceeded from the premise that the Warden had the burden of proving that Lejeune entered his guilty plea voluntarily, knowingly, and intelligently, and to carry that burden over the allegations of the petition in this case, the habeas court reasoned, the Warden had to show that Lejeune understood at the time of his plea that, if he had insisted upon a trial, he could not have been compelled at trial to testify for the prosecution. The habeas court concluded in the end that the Warden carried that burden. As a basis for its conclusion, the habeas court appears to have relied in significant part on the fact that the prosecution of Lejeune spanned several years, and it involved numerous pretrial hearings, a trial by jury in March 2005 that ended in a mistrial, and a second trial by jury in November 2005 that was underway when Lejeune pleaded guilty. Whether or not Lejeune was advised of his privilege against self-incrimination at or in connection with the proceeding in which he entered his plea, the habeas court found that he already had an adequate understanding of the constitutional privilege by virtue of earlier events in the course of his prosecution. On appeal,

---

trial. His habeas petition was based exclusively on the allegation that he never was adequately advised of his privilege against self-incrimination.

3

Lejeune contends that a number of these earlier events on which the habeas court relied do not actually support its finding, and we agree.

For instance, the habeas court pointed to three pretrial hearings in which Lejeune (through counsel) asserted his privilege against self-incrimination. But as Lejeune notes, a pretrial hearing is not a trial, and without more, the assertion of the privilege in a pretrial hearing would not necessarily put an accused on notice that he would enjoy the same privilege in other sorts of proceedings, such as a trial. See Wilson v. Kemp, 288 Ga. 779, 780 (727 SE2d 90) (2011) (it is the privilege *at trial* against self-incrimination that is significant for purposes of a guilty plea). See also Campos v. State, 292 Ga. 83, 85 (734 SE2d 359) (2012); Adams v. State, 285 Ga. 744, 746 n.3 (1) (683 SE2d 586) (2009). But see Hawes v. State, 281 Ga. 822, 825 (642 SE2d 92) (2007). Moreover, the first of these hearings was in December 2001, and the others were in June 2003. Lejeune did not enter his guilty plea until November 2005, nearly two-and-a-half years later. Cf. Bazemore v. State, 273 Ga. 160, 162 (1) (535 SE2d 760) (2000) (advice given to petitioner in connection with 1988 pleas did not show that petitioner was aware of his constitutional rights at the time of his 1990 plea). For these reasons, the pretrial hearings on which the habeas court relied do not support its

4

finding that Lejeune understood at the time of his plea that, if he instead insisted upon a trial, he could not be compelled to incriminate himself.

The habeas court also relied on the testimony of attorney Brian Steel — who represented Lejeune in connection with his second trial, but withdrew prior to Lejeune entering his guilty plea — which, according to the habeas court, showed that Steel advised Lejeune of his "Boykin rights." But as Lejeune argues on appeal, the habeas court appears to have taken a portion of that testimony out of context and misconstrued it. When Steel was deposed in connection with the habeas proceeding, he was asked on direct examination about the consultations that he had with Lejeune in connection with the second trial, especially whether he and Lejeune discussed that Lejeune could choose whether to testify at the trial. In response to these questions, Steel said:

> It wasn't ripe yet because [Lejeune] didn't actually — it wasn't the defense case in either trial. I don't know. I mean, I'm very thorough with my clients. So I don't know. I know I did discuss what we would call Boykin . . . rights with him because he never accepted a guilty plea when I was defending him.

This is the testimony on which the habeas court relied. But Steel subsequently testified that he never advised Lejeune about the constitutional rights that he would waive by virtue of a guilty plea because, during the time Steel represented

Lejeune, "it never got that far." In addition, Steel later testified unequivocally that he had "no memory" of advising Lejeune about his privilege against self-incrimination. And most important, Steel was asked on cross-examination: "And I believe you said on [d]irect that you know that you did *not* discuss the Boykin rights with [Lejeune]; is that also correct?" (Emphasis added.) To this question, Steel replied: "I feel it's very comfortable, yes." From a consideration of the entirety of his testimony, it seems clear to us that Steel misspoke when he testified on direct examination that he discussed the "Boykin rights" with Lejeune in connection with the second trial. The reliance of the habeas court upon that misstatement was clearly erroneous.

2. Because these findings of the habeas court find no support in the record, Lejeune argues that the Warden failed to prove that his plea was voluntary, knowing, and intelligent. Maybe that is so, but it matters only to the extent that the Warden must bear the burden of proving these things. Beginning with Purvis v. Connell, 227 Ga. 764 (182 SE2d 892) (1971), we have held in a number of cases that, whenever a habeas petitioner alleges that the plea on which his conviction rests was not voluntary, knowing, or intelligent, the respondent bears the burden of disproving those allegations. That was the premise from which the

6

habeas court proceeded in its consideration of the proof in this case, and it is the premise as well of the argument by Lejeune on appeal that he is entitled to habeas relief. But for the reasons that follow, we now conclude that Purvis and its progeny are based on a misunderstanding of Boykin, and they are inconsistent with the historical understanding in Georgia of the writ of habeas corpus. Accordingly, we overrule Purvis and its progeny, and we hold that Lejeune bears the burden as the petitioner of proving that his plea was not voluntary, knowing, or intelligent.

Our law appears always to have recognized a presumption of regularity with respect to the final judgments of courts of general jurisdiction, see LeMaster v. Orr, 101 Ga. 762, 764 (1) (29 SE 32) (1897), and criminal judgments of conviction were no different. See Wells v. Pridgen, 154 Ga. 397, 399 (114 SE 355) (1922). When a judgment of conviction was assailed by way of a petition for a writ of habeas corpus, our law presumed the regularity of the judgment, and it was understood that the petitioner bore the burden of overcoming the presumption. See, e.g., Gay v. Balkcom, 219 Ga. 554, 601 (134 SE2d 600) (1964); Stanforth v. Balkcom, 217 Ga. 816, 816 (125 SE2d 505) (1962); Solesbee v. Balkcom, 207 Ga. 352, 353 (1) (61 SE2d 471) (1950);

7

Wilcoxon v. Aldredge, 193 Ga. 661, 668 (19 SE2d 499) (1942). And this Court historically treated the presumption as especially warranted when the judgment of conviction was based upon a plea of guilty. See, e.g., Sharpe v. Smith, 225 Ga. 52, 54 (6) (165 SE2d 656) (1969) ("Since there is a presumption in favor of the validity of a sentence, especially where based upon a plea of guilty, the burden of overcoming this presumption is upon the prisoner." (Citation omitted.)); Dutton v. Parker, 222 Ga. 532, 533 (150 SE2d 833) (1966) ("There is a presumption in favor of the validity of sentences and this is especially true where, as here, they are based on pleas of guilty." (Citations omitted.)). Generally speaking, this Court has held to the presumption of regularity, and we have continued in most every context to put the burden upon the petitioner in habeas to show the irregularity of his conviction. See, e.g., Humphrey v. Walker, 294 Ga. 855, 859-860 (II) (A) (757 SE2d 68) (2014); St. Lawrence v. Bartley, 269 Ga. 94, 97 (1) (495 SE2d 18) (1998); Turpin v. Todd, 268 Ga. 820, 828-830 (2) (b) (493 SE2d 900) (1997); Gaither v. Gibby, 267 Ga. 96, 97 (1) (475 SE2d 603) (1996).

But beginning with Purvis, we departed from the usual and settled rule in habeas cases in which the petitioner claims that his plea was not voluntary,

8

knowing, and intelligent because he entered it without an adequate understanding of an essential constitutional protection, such as the privilege against self-incrimination. Just a few years before <u>Purvis</u>, the United States Supreme Court held in <u>Boykin</u> that the United States Constitution requires the State to bear the burden of showing on direct review that a plea was voluntary, knowing, and intelligent. See 395 U. S. at 242-244. In <u>Purvis</u>, we extended this allocation of the burden to habeas cases. Relying exclusively on <u>Boykin</u>, we held in <u>Purvis</u> that the United States Constitution forbids Georgia courts to indulge the usual presumption of regularity in a habeas case in which the petitioner contends that his plea was not voluntary, knowing, and intelligent:

> We are aware of cases in this state holding that since there is a presumption in favor of the validity of a sentence . . . especially where based upon a plea of guilty, the burden of overcoming this is upon the prisoner. However, this presumption can no longer be indulged with the advent of the <u>Boykin</u> case . . . .

227 Ga. at 767 (citations omitted). We failed in <u>Purvis</u>, however, to acknowledge that <u>Boykin</u> was no habeas case — it was a direct appeal from a judgment of conviction, see 395 U. S. at 240-241 — and the United States Supreme Court said nothing in <u>Boykin</u> about the burden in habeas proceedings or the presumption of regularity with respect to final judgments of conviction.

9

Considering that failure, the soundness of our reasoning in <u>Purvis</u> always was debatable. In the years after <u>Purvis</u>, although we adhered to its holding in a handful of cases, we never elaborated on its reasoning, nor did we articulate any alternative basis for its holding. Instead, in those few cases in which we mentioned <u>Purvis</u>, we simply restated its holding without additional comment. See, e.g., <u>Knight v. Sikes</u>, 269 Ga. 814, 816 (2) (504 SE2d 686) (1998); <u>Bowers v. Moore</u>, 266 Ga. 893, 895 (1) (471 SE2d 869) (1996); <u>Glover v. Jones</u>, 245 Ga. 848, 849 (268 SE2d 156) (1980); <u>Roberts v. Greenway</u>, 233 Ga. 473, 475 (2) (211 SE2d 764) (1975).

In the meantime, the United States Supreme Court decided <u>Parke v. Raley</u>, 506 U. S. 20 (113 SCt 517, 121 LE2d 391) (1992), making clear in its decision that <u>Boykin</u> did not, in fact, abrogate the presumption of regularity that attaches to final judgments, and nothing about <u>Boykin</u> requires that the State bear the burden of proving the voluntariness of a plea in the context of a collateral attack upon a final judgment:

> To import <u>Boykin</u>'s presumption of invalidity into this very different context [of a collateral attack on a conviction] would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to

10

final judgments, even when the question is waiver of constitutional rights.

506 U. S. at 29 (II) (B) (citation omitted).[3] After <u>Parke</u>, it was apparent that the rule of <u>Purvis</u> and its progeny was based on a misunderstanding of federal constitutional law. But when <u>Parke</u> was brought to our attention in <u>Byrd v. Shaffer</u>, 271 Ga. 691 (523 SE2d 875) (1999), a majority of the Court decided nevertheless to adhere to <u>Purvis</u> and its progeny. The majority did so, however, without any meaningful explanation of its decision. The majority instead just stated summarily that the respondent bears the burden in habeas of proving that a plea was voluntary, knowing, and intelligent, citing authority derived from

---

[3] To be sure, <u>Parke</u> involved a recidivist sentencing proceeding in which an earlier judgment of conviction fell under collateral attack, and <u>Parke</u> does not directly address the burden of proof with respect to the voluntariness of a plea in habeas. But like the collateral attack in <u>Parke</u>, a proceeding in habeas corpus "is a collateral attack that is separate and distinct from direct review, and occurs only after a prisoner has failed to obtain relief by direct appeal. It is not an extension of direct appeal: Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have otherwise become final. . . ." <u>Gibson v. Turpin</u>, 270 Ga. 855, 857 (1) (513 SE2d 186) (1999) (citation omitted; emphasis in original). More important, in speaking of the presumption of regularity in <u>Parke</u>, the United States Supreme Court made clear that it was speaking of the same presumption long recognized in habeas proceedings: "Although we are perhaps most familiar with this principle in habeas corpus actions, it has long been applied *equally* to other forms of collateral attack." <u>Parke</u>, 506 U. S. at 29-30 (II) (B) (citations omitted; emphasis supplied). A number of other courts have recognized that the holding of <u>Parke</u> extends to habeas proceedings. See, e.g., <u>Skaftouros v. United States</u>, 667 F3d 144, 158 (B) (1) (2d Cir. 2011); <u>Little v. Crawford</u>, 449 F3d 1075, 1080 (III) (A) (9th Cir. 2006); <u>United States v. Custis</u>, 988 F2d 1355, 1363 (III) (4th Cir. 1993).

11

Purvis,[4] and without any citation to Parke.[5] See Byrd, 271 Ga. at 692-693 (2).

Justices Carley and Hines dissented, relying on Parke, and arguing that "the petitioner in a habeas corpus proceeding bears the burden of overcoming the presumption of the validity of the conviction and sentence entered on his guilty plea." Id. at 696 (Carley, J., dissenting) (citations omitted). Since Byrd, we have reaffirmed in a number of cases that the respondent has the burden in habeas to prove that a plea was voluntary, knowing, and intelligent, but we never have articulated any basis for that rule other than our original reasoning in Purvis. See, e.g., Tyner v. State, 289 Ga. 592, 593 (2) (714 SE2d 577) (2011); Wilson v. Kemp, 288 Ga. 779, 779 (727 SE2d 90) (2011); Sentinel Offender Svcs. v. Harrelson, 286 Ga. 665, 666 (1) (690 SE2d 831) (2010); Sanders v. Holder, 285 Ga. 760, 761 (684 SE2d 239) (2009); Bullard v. Thomas, 285 Ga. 545, 545 (1) (678 SE2d 897) (2009); State v. Hemdani, 282 Ga. 511, 511 & n. 1 (651 SE2d 734) (2007); Arnold v. Howerton, 282 Ga. 66, 66 (646 SE2d 75) (2007); Hawes

---

[4] The Byrd majority cited Bowers, 266 Ga. at 895 (1). Like Byrd, Bowers summarily stated that the burden is on the State to show that a plea is voluntary, and Bowers cited only Roberts, 233 Ga. at 475 (2), for that proposition. Roberts relied on Purvis.

[5] Justice Hunstein concurred, acknowledging that no constitutional law required the State to bear the burden in habeas, but accepting that allocation of the burden as reflecting "the better policy position." Byrd, 271 Ga. at 693.

v. State, 281 Ga. 822, 822-823 (642 SE2d 92) (2007); Beckworth v. State, 281 Ga. 41, 42 (635 SE2d 769) (2006); Green v. State, 279 Ga. 687, 688 (620 SE2d 788) (2005); Baisden v. State, 279 Ga. 702, 702 (620 SE2d 369) (2005); State v. Futch, 279 Ga. 300, 300 (1) (612 SE2d 796) (2005); Foskey v. Battle, 277 Ga. 480, 482 (1) (591 SE2d 802) (2004); Britt v. Smith, 274 Ga. 611, 616-617 (1) (556 SE2d 435) (2001); Wetherington v. Carlisle, 273 Ga. 854, 855 (547 SE2d 559) (2001).

As we noted earlier, that reasoning is quite clearly erroneous. Throughout our history, Georgia law has presumed the regularity of final judgments of conviction, even when those judgments were challenged by way of a petition for a writ of habeas corpus. In Purvis, we departed from the presumption of regularity, but *only* because we concluded from Boykin that the United States Constitution required such a departure.[6] Parke made clear that we had misread Boykin, and the United States Constitution does not, in fact, abrogate the presumption of regularity. As a rule of federal constitutional law, the rule of

---

[6] To the extent that the dissent points to the Georgia Constitution, neither Purvis nor any of its progeny suggests that the Purvis rule is one of state constitutional law.

13

Purvis and its progeny is simply wrong, and the dissent does not even attempt to argue otherwise.

Instead, our dissenting colleagues would adhere to Purvis and its progeny as a matter of stare decisis. But even the venerable doctrine of stare decisis does not permit us to persist in an error of *federal* constitutional law. See Oregon v. Hass, 420 U. S. 714, 719 (II) (95 SCt 1215, 43 LE2d 570) (1975) (on questions of federal constitutional law, state courts must adhere to the decisions of the United States Supreme Court). And in any event, "stare decisis is not an inexorable command." State v. Jackson, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010) (citation and punctuation omitted). "When we consider whether an earlier decision ought to be reexamined, we consider a number of factors, including the age of the precedent, the reliance interests involved, the workability of the prior decision, and most importantly, the soundness of its reasoning." Smith v. State, 295 Ga. 120, 122 (757 SE2d 865) (2014) (citation and punctuation omitted). We also consider the ease with which the People and their elected representatives might overrule our precedents, if they think them incorrect. See Georgia Dept. of Nat. Resources v. Center for a Sustainable Coast, 294 Ga. 593, 601 (2) (755 SE2d 184) (2014) ("The doctrine of stare

14

decisis is always important, but it is less compelling when, as in this case, the issue is the meaning of a constitutional provision. That is because it is much harder for the democratic process to correct or alter our interpretation of the Constitution than our interpretation of a statute or regulation." (Citation omitted.)).

A consideration of the factors that inform the application of stare decisis leads to the conclusion that Purvis and its progeny ought to be overruled. First, because those precedents are based on a misunderstanding of *federal* constitutional law, their error is not capable of correction by the People of this State. Second, the reasoning of those precedents is quite obviously unsound, as shown by Parke. Third, when the courts speak of reliance interests in the context of stare decisis, they refer to contract interests, property rights, and other substantive rights. Jackson, 287 Ga. at 658 (5). See also State v. Hudson, 293 Ga. 656, 661 (748 SE2d 910) (2013). The rule of Purvis and its progeny implicates no such substantive rights. Fourth, the usual rule in habeas cases — that the petitioner bears the burden of proof — is more workable than the rule of Purvis and its progeny, inasmuch as, "in establishing a Boykin violation[,] the [petitioner] is the one best situated to know whether his or her rights were

15

infringed in the earlier proceedings." Nash v. State, 271 Ga. 281, 285 (519 SE2d 893) (1999) (citation and punctuation omitted). The only factor that points toward continuing adherence to Purvis and its progeny is the age of Purvis. But without more, that we have been wrong for many years and in many cases is no reason to persist in the error. See, e.g., Center for a Sustainable Coast, 294 Ga. at 601 (2) (overruling precedent that was "less than 20 years old," and citing cases in which the Court overruled precedents that were 29 and 90 years old); Hudson, 293 Ga. at 656-657 (unanimous decision overruling 38 year old precedent to account for more recent developments in federal constitutional law). We now overrule Purvis and its progeny.[7]

3. "We recognize that, given the clear, though incorrect, mandate of our overruled case law, [Lejeune] may be caught somewhat by surprise with this

---

[7] The dissent suggests that our overruling of Purvis and its progeny is some sort of novel departure from the usual rule of stare decisis. But this Court — unanimously, in most cases — has not hesitated to overrule longstanding precedents when it has become apparent that they are out of step with recent developments in federal constitutional law, even when our precedents were not themselves, strictly speaking, precedents of federal constitutional law, and instead were only influenced by our understanding of federal constitutional law. See, e.g., Hudson, 293 Ga. at 656-657; Sosniak v. State, 292 Ga. 35, 37-40 (2) (734 SE2d 362) (2012). The rule of Purvis and its progeny was not just influenced by our (mis)understanding of federal constitutional law; that rule *is* a rule of federal constitutional law, having been adopted only because we thought that Boykin required it.

opinion." <u>Sosniak v. State</u>, 292 Ga. 35, 40 (3) (734 SE2d 362) (2012). In the proceedings below, Lejeune and the habeas court both proceeded from the premise that the Warden had the burden of proof. That premise was wrong, and it is Lejeune who has the burden of proving that his plea was not voluntary, knowing, and intelligent. To afford Lejeune a fair opportunity to carry that burden, and to permit the habeas court in the first instance to consider the evidence with a proper understanding of the burden (and without the findings we have held to be clearly erroneous in Division 1), we vacate the decision of the habeas court, and we remand for a new evidentiary hearing consistent with this opinion.[8]

---

[8] We express no opinion about the nature or quality of the evidence required to carry the burden, and in particular, the extent to which a plea transcript alone, extrinsic evidence, or some combination of the two may be sufficient. See <u>Parke</u>, 506 U. S. at 30 (suggesting that extant transcript that is "suspiciously silent on the question [of] whether the defendant waived constitutional rights" might be enough to overcome the presumption of regularity and make out a case that the plea was not voluntary, knowing, and intelligent). We also need not determine at this point whether we should reconsider our recent precedents holding that the failure to advise a pleading defendant of one of the "three <u>Boykin</u> rights" can never be deemed harmless error, precedents which appear inconsistent with an earlier decision of this Court, see <u>Goodman v. Davis</u>, 249 Ga. 11, 13-14 (1) (287 SE2d 26) (1982), and which also have been subject to some criticism more recently. See <u>Tyner</u>, 289 Ga. at 595-596 (4) (opinion of Nahmias, J.); <u>Wilson</u>, 288 Ga. at 781-782 (Carley, P.J., dissenting). To reach and decide the merits in this case, the dissent would sweep away <u>Goodman</u> as an "anomaly," without any discussion of the soundness of its reasoning (including its conformity to the decisions of the United States Supreme Court) or the other factors that inform the application of stare decisis as they relate to <u>Goodman</u>, a precedent that has been on the books for nearly

17

Judgment vacated and case remanded with direction. All the Justices concur, except Hines, P. J., Benham and Hunstein, JJ., who dissent.

---

as long as <u>Purvis</u>. The inconsistency of our more recent cases with <u>Goodman</u> will have to be resolved some day, and perhaps in this case, but that is better done on a record following a hearing at which everyone understood the proper allocation of the burden. We remand for development of such a record, and we decline at this point to further address the apparent inconsistency between <u>Goodman</u> and the other cases on which the dissent relies.

S14A1155. LEJEUNE v. McLAUGHLIN.

HINES, Presiding Justice, dissenting.

I respectfully dissent because the opinion of the majority upturns well-established and well-founded Georgia precedent, and, under the facts of this case, will result in a legal distinction without an effective difference.

Lejeune was indicted for two counts of malice murder, felony murder, aggravated assault, concealing the death of another, and possession of a firearm during the commission of a crime, and the State sought the death penalty. Lejeune's first trial ended in a mistrial, and it was in the midst of his second trial that Lejeune entered his negotiated plea of guilty to one count of malice murder and was sentenced to life without the possibility of parole. Brian Steel and August Siemon represented Lejeune at both trials, with Steel acting as lead counsel. However, Steel withdrew from the case prior to Lejeune entering his guilty plea, and Siemon alone represented Lejeune at the plea hearing. Lejeune filed the present habeas corpus petition, alleging that his guilty plea was not entered into voluntarily and intelligently because the trial court failed to advise him of all of the constitutional rights he would be waiving by entering the plea.

Following a hearing on the petition, the habeas court rejected Lejeune's challenge to the plea and denied the requested relief. This Court granted Lejeune's application for a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus expressly to determine whether the habeas court properly concluded that Lejeune's plea was knowingly and voluntarily entered. And, that is what this Court should do.

When a criminal defendant challenges the constitutionality of his guilty plea, it is the State's burden to show that the plea was informed and voluntary, including that the defendant made an articulated waiver of the three constitutional rights set forth in *Boykin v. Alabama*, 395 U.S. 238 (89 SCt 1709, 23 LE2d 274) (1969), which are the right to trial by jury, the privilege against self-incrimination, and the right to confront one's accusers. *Lewis v. State*, 293 Ga. 544, 545 (748 SE2d 414) (2013).[1] For more than 40 years this Court has

---

[1] The State's burden can be met by showing on the record that the defendant was aware of his rights and that he waived those rights, or by using extrinsic evidence that shows affirmatively that the defendant entered the guilty plea knowingly and voluntarily. *Bazemore v. State*, 273 Ga. 160, 161 (1) (535 SE2d 760) (2000). If the State does not make this showing, the defendant's guilty plea will be deemed invalid. Id. It should be noted that more than 30 years ago, *Goodman v. Davis,* 249 Ga. 11 (287 SE2d 26) (1982), issued from this Court. In that case, following pleas of guilty to burglary and aggravated assault on a peace officer, the defendant filed a petition for habeas corpus challenging the validity of his pleas on the bases that at the time he tendered his pleas, the plea court failed to advise him of his right against self-incrimination, and therefore, his pleas were not voluntarily entered. He

firmly held that this is so specifically in the context of a habeas corpus proceeding. Indeed, in 1971, in *Purvis v. Connell*, 227 Ga. 764 (182 SE2d 892) (1971), this Court acknowledged the general burden of the petitioner in a habeas proceeding, but made the deliberate decision to have the State, in a *Boykin* challenge, bear the responsibility of showing voluntariness of the plea not only on direct appeal but also in habeas cases. *Purvis v. Connell*, at 767. As acknowledged by the majority, since *Purvis,* this Court has issued a legion of

maintained that under *Boykin* the plea court's failure to determine, on the record, whether he knowingly waived his right against self-incrimination prior to accepting his guilty pleas required reversal and invalidation of the pleas. This Court stated that it did "not read *Boykin* as requiring the invalidation of a voluntarily made guilty plea where the record clearly reflects that the accused fully understands the nature of the charges against him and the consequences of entering a guilty plea, *but the court fails to specifically advise him that he has a right to remain silent prior to accepting the guilty plea*." Id. at 13. (Emphasis supplied.) The Court went on to state that it construed *Boykin* as requiring that there be a sufficient record of the plea proceeding to determine whether the defendant had freely and voluntarily entered the plea, and understood the nature of the charges against him and the consequences of his plea; that Goodman did not allege that he was in any way prejudiced by the failure of the plea court to advise him of his right to remain silent; and that any error in failing to advise Goodman of his right against self-incrimination was, under the facts of the case, harmless. Id. at 14. The Court concluded that the record showed that Goodman's pleas were voluntarily entered, and "decline[d] to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of *Boykin* have otherwise been met." Id. Since *Goodman*, this Court has consistently viewed "advice and waiver of the 'three *Boykin* rights' as a strict constitutional requirement, with reversal the automatic consequence if any deviation is found to have occurred." *Tyner v. State*, 289 Ga. 592, 595 (4) (714 SE2d 577) (2011). Thus, to the extent that *Goodman* is an anomaly, it should be disapproved.

3

decisions adhering to the determination to have the *Boykin* burden remain the State's in a habeas proceeding. See, e.g., *Tyner v. State,* 289 Ga 592, 593 (2) (714 SE2d 577) (2011); *Wilson v. Kemp*, 288 Ga. 779 (727 SE2d 90) (2011); *Sentinel Offender Services, LLC v. Harrelson*, 286 Ga. 665, 666 (1) (690 SE2d 831) (2010); *Sanders v. Holder*, 285 Ga. 760, 761, (684 SE2d 239) (2009); *Bullard v. Thomas*, 285 Ga. 545 (1) (678 SE2d 897) (2009); *State v. Hemdani*, 282 Ga. 511 (651 SE2d 734) (2007); *Arnold v. Howerton*, 282 Ga. 66, 67-68 (646 SE2d 75) (2007); *Hawes v. State*, 281 Ga. 822 (642 SE2d 92) (2007); *State v. Cooper*, 281 Ga. 63, 64 (1) (636 SE2d 493) (2006); *Beckworth v. State*, 281 Ga. 41, 42 (635 SE2d 769) (2006); *Green v. State*, 279 Ga. 687 (620 SE2d 788) (2005); *Baisden v. State*, 279 Ga. 702 (620 SE2d 369) (2005); *State v. Futch*, 279 Ga. 300, 301 (1) (612 SE2d 796) (2005); *Foskey v. Battle*, 277 Ga. 480, 482 (591 SE2d 802) (2004); *Britt v. Smith*, 274 Ga. 611, 612 (556 SE2d 435) (2001); *Bazemore v. State*, 273 Ga. 160, 161 (1) (535 SE2d 760) (2000); *Byrd v. Shaffer*, 271 Ga. 691, 692 (2) (523 SE2d 875) (1999); *Knight v. Sikes*, 269 Ga. 814 (504 SE2d 686) (1998); *Glover v. Jones*, 245 Ga. 848 (268 SE2d 156) (1980); *Mason v. Banks*, 242 Ga. 292 (248 SE2d 664) (1978); *Andrews v. State*, 237 Ga. 66 (1) (226 SE2d 597) (1976).

4

This Court's position was not diminished by the Supreme Court's 1992 decision in *Parke v. Raley*, 506 U.S. 20 (113 SCt 517, 121 LE2d 391) (1992), which dealt with a collateral attack in a recidivist proceeding. In fact, post *Parke v. Raley*, this Court in *Byrd v. Shaffer,* supra., confirmed its intent to require the State to show the voluntariness of a plea in habeas cases.[2] Indeed, the argument for shifting the evidentiary burden was made and soundly rejected. Id. at 693 (2). And, while 15 years ago I joined then Justice Carley's dissent in *Byrd v. Shaffer*, I recognize that imposing opposite burdens in a

---

[2]The majority opinion concludes that *Purvis* and its progeny incorrectly apply federal constitutional law, and criticizes this dissent as not attempting to argue otherwise. But, the linchpin of the majority's conclusion that this Court has for decades misapplied federal constitutional law is its unbounded reading of *Parke v. Raley* as a mandate to burden shift when a *Boykin* challenge is made in a habeas proceeding. Moreover, the majority's criticism fails to take into account any impact of the constitutional law of this State. A state high court certainly has the right to interpret its State Constitution to grant individuals more rights than those provided by the Federal Constitution. *Powell v. State*, 270 Ga. 327, 331 (n. 3) (510 SE2d 18) (1998). As noted earlier, *Boykin* identifies three federal constitutional rights that are waived when a plea of guilty is entered in a state criminal trial, i.e., the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. The Constitution of the State of Georgia also guarantees those three rights. See Ga. Const. of 1983, Art. I, Sec. 1, Par. XVI (privilege against self-incrimination); Art. I, Sec. 1, Par. XI (right to trial by jury); Art. I, Sec. 1, Par. XIV (right to confront adverse witnesses). Indeed, this Court has held that the Georgia Constitution affords broader protection than the federal constitution in regard to the privilege against self-incrimination. *Green v. State*, 260 Ga. 625, 627 ( 398 SE2d 360) (1990). The protections guaranteed to the citizens of Georgia provide further support for maintaining that the State bear the responsibility for showing the voluntariness of a plea in habeas cases.

5

*Boykin* challenge on direct appeal and on habeas may be problematic as a matter of policy and practice.

As noted by Justice Hunstein in her concurrence in *Byrd v. Shaffer,* a habeas corpus proceeding filed by a defendant who pled guilty to the challenged conviction may be different from the situation of a recidivist defendant, in that a habeas petitioner challenging the voluntariness of a guilty plea can raise the issue only if it has not been procedurally defaulted; when a timely direct appeal was not brought from a conviction on a guilty plea, habeas corpus is the only remedy for a criminal defendant who subsequently asserts that his plea was not knowingly and voluntarily entered based on a matter which requires examination of evidence outside the record. *Byrd v. Shaffer* at 694. In such a situation, the habeas petitioner essentially is in the same position as a defendant who has directly appealed his guilty plea. Id. at 695.

Equally problematic is the majority's abandonment of precedent in this case as it is in flagrant disregard of the important principle of stare decisis and promotes a practice of singular case rule. This Court, and in fact the author of the majority, most recently affirmed the great significance of stare decisis in our system of justice:

6

> As a general rule, American courts adhere to the principle of stare decisis, which directs the courts to stand by their prior decisions. We have noted that [t]he application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. As the United States Supreme Court has explained, [v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.

*Smith v. State*, 295 Ga. 120, 121-122 (757 SE2d 865) (2014) (Blackwell, J.)

Certainly, there may be compelling reasons to reexamine an earlier decision. Id. at 122. But, there is no such urgent need in this case; our original interpretation of the mandate of *Boykin* is nearly half a century old, and the fifteen-year-old controlling precedent confirming that decision has been imminently workable, and takes into account the important policy considerations outlined above. *Smith v. State*, at 121-122. It also is an acknowledgment of the gravity of a *Boykin* challenge, for advice and waiver of the three *Boykin* rights is a strict constitutional requirement. *Tyner v. State*, supra at 595 (4).

7

Even if we were to overrule our long standing precedent in this regard, and shift the burden to the petitioner this is not the appropriate vehicle in which to do so, and remand the case for yet another hearing, in that the undisputed record shows a *Boykin* violation. Regardless of who technically had the burden, there was an extensive hearing below, and neither the record of the plea proceeding nor the offered extrinsic evidence permits the legal conclusion that Lejeune was advised of the right against self-incrimination.

As the habeas court expressly concluded, the transcript of the guilty plea hearing clearly reflects that the plea court informed Lejeune of his rights to trial by jury and to confront witnesses against him, and that Lejeune waived these rights. But, the record also plainly reveals that while the plea court did inform Lejeune that he would be giving up the right to testify during a jury trial, it did not tell him that he would be forfeiting the privilege not to incriminate himself upon entering a guilty plea.[3] Merely informing a defendant of his Sixth

---

[3] The plea judge testified by deposition in the habeas corpus proceeding that she was not aware of any conversations during which Lejeune would have been advised of the rights he was waiving by entering the guilty plea; that if a plea was entered in the midst of a trial, the typical practice was to have any conversations prior to entry of the plea outside the judge's presence and to then "go on the record" for entry of the plea; and that the judge would not participate in pre-trial negotiations or discussions, and would not have off-the-record conversations about "who gets told what" during the course of the plea.

8

Amendment right to testify at trial if the defendant so wishes is insufficient to alert a defendant of his Fifth Amendment right not to incriminate himself. *Hawes v. State*, 281 Ga. 822, 825 (642 SE2d 92) (2007). Nevertheless, the habeas court concluded that after consideration of the guilty plea hearing transcript along with the record, it was "convince[d]" that Lejeune was informed that he was waiving his right not to incriminate himself, was aware of his right against self-incrimination, and knowingly waived that right by entering the guilty plea. In addition, the habeas court concluded that by making the strategic decision to testify during his first trial in 2005, Lejeune understood that he could choose not to testify, and therefore, remain silent at trial. Relying on *Parke v. Raley*,[4] for the proposition that a defendant's prior experience with the criminal justice system is relevant to the question of whether the defendant knowingly waived constitutional rights, the habeas court held that the record and Lejeune's experience throughout the criminal case sufficiently demonstrated that he was

---

[4]In so doing, the habeas court acknowledged that this Court has rejected the proposition that the State may demonstrate the voluntariness of a plea by showing that the defendant had prior experience in the criminal justice system. See *State v. Futch,* supra at 301 (2); *Foskey v. Battle*, supra at 482 (1); *Bazemore v. State*, supra at 162 (1).

9

aware of the rights he was waiving by entering the guilty plea, and therefore, his guilty plea was knowingly, intelligently, and voluntarily entered.

The habeas court's conclusions were premised upon express findings, which included in relevant part: prior to Lejeune's initial jury trial and at three separate hearings pursuant to the Unified Appeal Procedure at which Lejeune was present, his counsel informed the trial court that Lejeune would exercise his rights under the Fifth Amendment and remain silent; in preparation for the first trial, Lejeune was informed that it was his choice whether to testify; in preparation for the second trial, counsel again discussed with Lejeune whether he would choose to testify and in that exchange "did discuss what we would call Boykin . . . rights with [Lejeune]"; prior to the guilty plea, attorney Siemon advised Lejeune that he would be waiving certain rights by entering the guilty plea; Siemon discussed with Lejeune what would happen when they went before the judge . . . that [Lejeune] would be asked certain questions; Siemon would "say something about . . . that by entering a guilty plea that would end the trial and there are certain rights associated with the trial that he would waive, although [Siemon] wouldn't necessarily enumerate the rights without a written plea form"; after having done hundreds of pleas, Siemon did not have a clear

recollection of what he advised [Lejeune]; Siemon "agree[d]" that by entering a guilty plea constitutional rights are waived; Siemon would have advised Lejeune "generally that was the case," advised him "of what he was pleading guilty to," and would talk about the sentence, Siemon stating "I know we did in this case . . . and I think I did all of that." [5]

This Court reviews a habeas court's findings of fact for clear error, and as the majority concedes, certain pivotal findings of fact by the habeas court in this case do not survive such a standard of review. See *Denson v. Frazier,* 284 Ga. 858, 860 (672 SE2d 625) (2009). Furthermore, the habeas court's legal analysis is flawed.

First, as stated in the majority, the habeas court's findings regarding Lejeune's exercise of his Fifth Amendment right to remain silent at hearings

---

[5]At the habeas hearing, Siemon testified that other than possible sentences, he was "not sure" of what else he advised Lejeune regarding entry of the guilty plea; that he "essentially" told Lejeune that he would be waiving certain rights by entering the plea but did not "recall specifically" what he advised Lejeune "in terms of any rights that he would have been waiving"; and that as a general practice, he relied on plea forms to advise clients of the specific rights they were about to waive upon entering a guilty plea. In this case, there is no plea form in the record before the habeas court. When asked what he would do without a plea form, Siemon said "I can't, I don't think there's – I don't think I have a usual practice for when there's no plea form because it's so rare not to have a plea form. I think if I had a case where there was no plea form, I would figure that the judge was going to read all of those rights in the record, on the record, and that's why there was no plea form."

11

prior to his first trial do not support the habeas court's conclusions as a matter of law. The phrases "right to remain silent" and "right against self-incrimination" can be synonymous for the purpose of satisfying *Boykin* if it is evident that the reference is to the right to remain silent at trial. *Campos v. State*, 292 Ga. 83, 85 (734 SE2d 359) (2012). That is plainly not the situation here. The cited invocations were before Lejeune's first trial, the most recent made nearly two and a half years prior to the entry of his plea. More significantly, they were made by Lejeune's attorney in direct response to the trial court's inquiries as to whether Lejeune was satisfied with the services of his counsel. As previously noted and acknowledged by the habeas court, mere familiarity with the criminal justice system will not support the determination that a plea was knowing and voluntary. See footnote 4, supra.

Second, the habeas court's finding that Lejeune was informed about his choice to testify prior to his first trial does not lend legal support for sustaining the guilty plea. Again, for the purposes of *Boykin,* informing a defendant of his Sixth Amendment right to testify at trial does not equate to knowledge by him of his Fifth Amendment privilege against self-incrimination which is being waived by the plea proceeding. *Hawes v. State*, supra at 825.

12

The cited statements about attorney Siemon's conversations with Lejeune are at best vague, general, and speculative, and therefore, do not serve as a legal basis for upholding the plea under *Boykin*. See *Lawrence v. State*, 234 Ga. App. 603 (507 SE2d 490) (1998).

Finally, as also conceded by the majority, the facially favorable finding by the habeas court that in discussion with Lejeune in preparation for his second trial, attorney Steel "did discuss what we would call <u>Boykin</u> . . . rights with [Lejeune]" does not withstand scrutiny either. The habeas court expressly noted that the discussion was in the context of whether Lejeune would testify at trial, which might well be insufficient to satisfy the requirements of *Boykin* with respect to the right not to incriminate oneself. *Hawes v. State*, supra at 825. Even more significantly, as highlighted by the majority, examination of this fragment of a deposed statement by Steel in the context of the complete sentence and of Steel's entire deposition testimony makes plain that it was not intended to be an affirmative statement, but quite the contrary, and that at no point did he advise Lejeune that by entering a guilty plea he would waive certain rights. The cross-examination of Steel left no doubt that Steel's direct testimony was negative on the question of whether he had advised Lejeune of the *Boykin* rights.

13

Thus, the habeas court's positive finding in regard to the statement is clearly erroneous, and therefore, not valid factual support for the plea.

In a guilty plea proceeding, there must be affirmative evidence that a defendant's rights were conveyed to him, including that the right against compulsory self-incrimination would be waived by pleading guilty. *State v. Hemdani*, supra at 512. This is warranted because,

> [t]he waiver of constitutional rights that occurs when a plea of guilty is entered is so great that it demands that utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.

*Bowers v. Moore*, 266 Ga. 893, 894 (1) (471 SE2d 869) (1996) (internal citations and quotation marks omitted). In this case, there was no affirmative evidence that either the plea court or trial counsel entered into a colloquy with Lejeune and explained, even in essence, his right against self-incrimination.

Thus, even if the evidentiary burden was Lejeune's, he has carried it, and the judgment of the habeas court should not stand for that reason. The majority seeks to justify remand, in part, to "afford Lejeune a fair opportunity" to once again "carry that burden." This is disingenuous at best. And, it is difficult to

fathom the fairness, or indeed reasonableness, in requiring either the prisoner or the State to again plow the same ground of a plea made nearly a decade ago, the circumstances of which have not changed. Neither the case at bar nor the judicial process is served by further hearing in this matter.

I am authorized to state that Justice Benham and Justice Hunstein join in this dissent.